IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STACEY DeGRAW, as mother and    :
next friend of ELIZABETH
STACEY CZAPLICKI               :

    vs.                        :    CIVIL ACTION NO. WDQ-02-2862
                           (Magistrate Judge Bredar)
LEONARD MOODISPAW, TRUSTEE      :

## MEMORANDUM

This action has been referred to the undersigned for all proceedings by consent of the parties. It is a dispute over the proceeds of a life insurance policy issued by Metropolitan Life Insurance Co. ("MetLife") pursuant to the Federal Employees Group Life Insurance Act ("FEGLIA"), 5 U.S.C. §§ 8701-8716, on the life of Edward Joseph Czaplicki ("Mr. Czaplicki"), who died on May 9, 2002. The amount at issue is $125,000. On August 27, 2002, MetLife filed a complaint (later amended) for declaratory judgment and interpleader, seeking a determination of the beneficiary of the policy. The amended complaint named as defendants: (1) Stacey DeGraw ("Ms. DeGraw"), as mother and next friend of Elizabeth Stacey Czaplicki ("Elizabeth"), a minor; and (2) Leonard E. Moodispaw ("Mr. Moodispaw"), as trustee of the Edward Joseph Czaplicki Irrevocable Insurance Trust. By order dated August 29, 2002, the proceeds of the FEGLI policy, in the amount of $125,000, plus interest, were paid into registry of the Court. By an order dated January 28,

2003, a consent judgment of interpleader was entered, and this action has proceeded as captioned above. The same order awarded MetLife its costs and attorney fees in the amount of $1,900 to be paid from the interpleaded funds.

The plaintiff, Elizabeth, by and through her mother and next friend, Ms. DeGraw, contends that the proceeds belong to her, and she has filed a motion for summary judgment, seeking declaratory and other relief. The defendant Mr. Moodispaw, in his capacity as trustee, contends that they belong to the trust, and he has filed a cross-motion for summary judgment. The matters have been fully briefed by the parties, and no hearing is necessary. Local Rule 105.6 (D. Md.).

<u>BACKGROUND</u>

The decedent, Mr. Czaplicki, worked for the United States Department of Defense, National Security Agency ("NSA"). Pl.'s Mot., Ex. 2. In 1990, he married Ms. DeGraw. Pl.'s Mot. at 3. During their marriage, they lawfully adopted Elizabeth, who was born on September 15, 1992. *Id.* In January 1997, Mr. Czaplicki purchased the $125,000 FEGLI policy at issue. Def.'s Mot., Ex. A.

On November 7, 1997, the Circuit Court for Baltimore County entered a judgment of absolute divorce between Mr. Czaplicki and Ms. DeGraw that incorporated the terms of the parties'

2

settlement agreement, dated September 5, 1997.  Pl.'s Mot., Ex.

1.  The settlement agreement required that Mr. Czaplicki

> either through life insurance beneficiary
> designations, trust provisions, or in his
> Will, provide a fund of not less than One
> Hundred Twenty Thousand Dollars ($120,000)
> for [Elizabeth] to be used for [her]
> support, maintenance, and education . . . in
> the event of [his] death.  The said fund
> shall be administered by [Ms. DeGraw] and,
> if [Mr. Czaplicki] so desires, another party
> as trustee. . . . [Mr. Czaplicki's]
> obligation . . . shall terminate . . . on
> that date on which [Elizabeth] reaches the
> age of Twenty-Two (22).

*Id.* ¶ 5.

In 1999, Mr. Czaplicki retired from the NSA but continued

his insurance coverage under the FEGLI policy.  On July 10,

2001, pursuant to the settlement agreement, Mr. Czaplicki

designated Elizabeth as sole beneficiary of the $125,000 policy.

*Id.*, Ex. 2.  The United States Office of Personnel Management

("OPM"), which keeps all records relating to the FEGLI policies

of retired federal employees, received Mr. Czaplicki's validly

executed designation on August 3, 2001, and received a certified

copy of the divorce decree and settlement agreement on August

20, 2001.  *Id.*, Ex. 3.

On March 29, 2002, Mr. Czaplicki executed a document

designating a different beneficiary:  the trustee or successor

trustee of the Edward Joseph Czaplicki Irrevocable Insurance

3

Trust. *Id.*, Ex. 5. The same day, he executed a trust instrument establishing a trust of the same name. *Id.*, Ex. 4. OPM received Mr. Czaplicki's change-of-beneficiary designation on April 2, 2002. *Id.*, Ex. 3.

The trust instrument names Mr. Moodispaw and his successors as "trustee" and Ms. DeGraw as the "administrator." *Id.*, Ex. 4, § 1.01. It designates Elizabeth as the "primary beneficiary" and three other persons as "secondary beneficiaries." *Id.* § 2.01. The trust requires the trustee to

> pay over to the [a]dministrator or apply for the benefit of Elizabeth . . . during her lifetime until she reaches the age of 22 years, so much of the net income, and of the principal if necessary, of the trust estate *as in the sole and absolute discretion of [t]rustee shall be desirable or appropriate* for the support, health, education . . . and maintenance in reasonable comfort of said beneficiary.

*Id.* § 2.02 (emphasis added); *see also id.* § 4.01 ("Trustee shall make all payments hereunder directly to the [a]dministrator of the primary beneficiary . . . ."). When Elizabeth turns twenty-two (or dies earlier), the trust terminates and the trustee must distribute any remaining funds to the secondary beneficiaries. *Id.* § 2.04.

<u>SUMMARY JUDGMENT STANDARD</u>

4

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Here, both parties concede that no genuine issue of material fact exists; they dispute only matters of law.

ANALYSIS

Because the life insurance policy at issue is a FEGLI policy, the provisions of FEGLIA govern.  5 U.S.C. § 8709(d)(1).  FEGLIA occupies the entire field of federal group life insurance.  *Metro. Life Ins. Co. v. Christ*, 979 F.2d 575, 578-79 (7th Cir. 1992).  Any provisions in a FEGLI policy that "relate to the nature or extent of coverage or benefits (including payments with respect to benefits)" supersede and preempt any state law that "relates to group life insurance" and is inconsistent with the policy provisions.  5 U.S.C. § 8709(d)(1).  And if state law conflicts with federal law, even in the area of domestic relations, state law must yield.  *See Ridgway v. Ridgway*, 454 U.S. 46, 54-55 (1981).

FEGLIA's order of precedence of beneficiaries is mandatory and inflexible.  *Christ*, 979 F.2d at 578; *Metro. Life Ins. Co. v. Pearson*, 6 F. Supp. 2d 469, 471 (D.Md. 1998).  The law's

inexorable command permits no balancing of equities. *O'Neal v. Gonzalez*, 839 F.2d 1437, 1440 (11th Cir. 1988); *Metro. Life Ins. Co. v. Holland*, 134 F. Supp. 2d 1197, 1202 (D.Or. 2001)("[U]nder FEGLIA, the equities are neither relevant nor determinative on the issue of who is entitled to FEGLI life insurance proceeds.").

FEGLIA provides, in relevant part:

> (a) Except as provided in subsection (e), the amount of group life insurance . . . in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:
>      First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before his death in the employing office or, if insured because of receipt of annuity or of benefits [e.g., retired] . . . in [OPM]. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.

>           . . . .

> (e)(1) Any amount which would otherwise be paid to a person determined under the order of precedence named by subsection (a) shall be paid (in whole or in part) by the Office to another person *if and to the extent expressly provided for in the terms of any court decree of divorce . . . or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce . . . .*

(2) For purposes of this subsection, a decree, order, or agreement referred to in paragraph (1) shall not be effective unless it is received, before the date of the covered employee's death, by the employing agency or, if the employee has separated from service, by [OPM].
(3) A designation under this subsection with respect to any person may not be changed except —
(A) with the written consent of such person, if received as described in paragraph (2); or (B) by modification of the decree, order, or agreement, as the case may be, if received as described in paragraph (2).

5 U.S.C. § 8705(a), (e)(1)-(3)(emphasis added).

FEGLIA also authorizes OPM to prescribe regulations to carry out the provisions of 5 U.S.C. § 8705(e).  *Id.* § 8705(e)(4). Pursuant to that authority, OPM has adopted regulations governing the order of precedence and payment of benefits.  As pertinent, the regulations provide:

(a)    Except as provided in paragraph (d) of
this section, benefits are paid according to the order of preference stated in 5 U.S.C. 8705(a), as follows:
(1) To the designated beneficiary (or beneficiaries);

. . . .

(d)(1) If there is a court order in effect naming a specific person or persons to receive life insurance benefits upon the death of an insured individual, [benefits] will be paid to the person or persons named in the court order, instead of according to the order of precedence.

7

>           (2)To qualify a person for such payment,
>           a certified copy of the court order must be
>           received by the appropriate office . . .
>           before the death of the insured.

5 C.F.R. § 870.801(a)(1), (d)(1) and (2)(2002). For a retired

federal employee, the "appropriate office" is OPM. *Id.* §§

870.101, 870.801(d)(3)(ii).

The regulations further provide that if a court order has

been properly received, "an insured individual cannot designate

a different beneficiary, unless . . . [t]he person(s) named in

the court order gives written consent for the change, or . . .

[t]he

court order is modified." *Id.* § 870.802(i)(1). A "court

order" means "any court decree of divorce . . . or the terms of

any court order or court-approved property settlement agreement

relating to any court decree of divorce, . . . the terms of

which require FEGLI benefits to be paid to a specific person or

persons." *Id.* § 870.101.

Although under Maryland law a parent is deemed to be the

natural guardian of his or her minor child, Md. Code Ann., Fam.

Law § 5-203, that guardianship is deemed to be a guardianship of

the person and is distinct from a guardianship of the property

of the minor. *Courtney v. Lawson,* 631 A.2d 102, 105 (Md. Ct.

Spec. App. 1993). Maryland law requires that a guardian of the

property be appointed by the appropriate court when a minor owns or is entitled to property that requires management or protection. Md. Code Ann., Est. & Trusts §§ 13-201, 13-206. Ms. DeGraw, as Elizabeth's mother, would have priority of appointment as guardian of her daughter's property. Md. Code Ann., Est. & Trusts § 13-207(a). Accordingly, the designation of Elizabeth as sole beneficiary of the FEGLI policy effectively carried out the terms of the settlement agreement. *See Benik v. Hatcher*, 358 Md. 507, 532 (2000)("Everyone is presumed to know the law regardless of conscious knowledge or lack thereof, and [is] presumed to intend the necessary and legitimate consequences of [his or her] actions in its light.")(citation and internal quotation marks omitted).

If it is assumed *arguendo* that Mr. Czaplicki could unilaterally change his designation of beneficiary from Elizabeth to a trust, the trust so designated must substantially comply with the terms of the settlement agreement. Otherwise, FEGLIA would permit the change only if Elizabeth had given her written consent or the settlement agreement had been judicially modified. 5 U.S.C. § 8705(e)(3); 5 C.F.R. § 870.802(i)(1).

The trust does not substantially comply with the settlement agreement. The latter agreement mandates that Ms. DeGraw herself administer the fund established for Elizabeth. Pl.'s

Mot., Ex. 1, ¶ 5.  It thus gives Ms. DeGraw the authority and discretion (subject to judicial oversight as required by law) to manage the fund and to make payments to or for Elizabeth. Although the settlement agreement also gave Mr. Czaplicki the right to appoint a *co*-trustee to administer the fund *jointly*, *id.*, it did not give him the right to strip Ms. DeGraw of the trusteeship.  The trust, however, vests "sole and absolute discretion" over the fund in the trustee, not Ms. DeGraw.  Pl.'s Mot., Ex. 4, § 2.02.  The trustee alone has the power to manage the fund.  *Id.* § 3.  Before Ms. DeGraw can use the fund for Elizabeth, the trustee first must make a discretionary distribution to Ms. DeGraw.  *Id.* § 4.01.  If considering that the trust labels Ms. DeGraw the "administrator," it effectively demotes her from joint trustee to, at most, under-trustee.  The settlement agreement sanctions no such hierarchical management.

FEGLIA requires that the proceeds of the policy be paid "to the extent expressly provided for in the terms of" the settlement agreement.  5 U.S.C. § 8705(e)(1).  Because the terms of the trust substantially deviate from the terms of the settlement agreement, payment to the trustee would divert the proceeds "to someone other than the person to whom FEGLIA's order of precedence says 'shall be paid.'"  *Christ*, 979 F.2d at

579(quoting 5 U.S.C. § 8705(a)).  The mandatory and inflexible language of FEGLIA, moreover, renders both the decedent's intent and the equities of the parties irrelevant.  *See supra.* Therefore, as the settlement agreement has not been modified by court order, the trustee would be entitled to the proceeds of Mr. Czaplicki's FEGLI policy *only if* OPM had received Elizabeth's written consent to the change of beneficiary before Mr. Czaplicki died.  5 U.S.C. § 8705(e)(3)(A); 5 C.F.R. § 870.802(i)(1)(i).

When her father died, Elizabeth was nine years old.  Pl.'s Mot., Ex. 1.  Whatever consent she might herself have given, she did not.  Mr. Moodispaw nevertheless argues that Mr. Czaplicki had the right to consent to the change of beneficiary on Elizabeth's behalf — and that he did so in writing by signing the new designation of beneficiary, which OPM received before he died.  He premises his argument on:  (1) the legal axiom that parents are "joint natural guardians of their minor child," Md. Code Ann., Fam. Law § 5-203(a)(1984, 1999 Repl. Vol., Supp. 2002); and (2) the fact that the settlement agreement awarded "joint legal custody" of Elizabeth to Ms. DeGraw and Mr. Czaplicki, Pl.'s Mot., Ex. 1, ¶ 3.

This clever argument, if valid, would vitiate not only the life insurance provision in *this* court-approved settlement

11

agreement but similar provisions in *all other* such agreements. The ex-husband, who had "agreed" to maintain a life insurance policy for the benefit of his and ex-wife's minor child, could later "consent" *ad libitum* on child's behalf to change the beneficiary to anyone he chose. Such a result cannot be countenanced.

The settlement agreement is a contract between husband and wife, subject to the general law of contract interpretation. *Goldberg v. Goldberg*, 290 Md. 204, 212 (1981); *Fultz v. Shaffer*, 111 Md. App. 278, 297-99 (1996). Under the terms of the agreement at issue here, Mr. Czaplicki obligated himself *to Ms. DeGraw* to provide a particular fund for the benefit of their daughter. Mr. Czaplicki retained the right to make only specified changes to the fund on his own. Without *Ms. DeGraw's* consent to modify the agreement, Mr. Czaplicki could not have consented on Elizabeth's behalf to make any other changes. *See* Pl.'s Mot., Ex. 1, ¶ 18.F ("No modification or waiver of any of the terms of this Agreement shall be valid unless made in writing, and signed by the parties."). In essence, mother and father agreed that they could consent only *mutually* on their minor daughter's behalf to make such changes. And Ms. DeGraw has not consented. Accordingly, Elizabeth is entitled to the proceeds of Mr. Czaplicki's FEGLI policy as a matter of law, at

12

least to the extent of the first $120,000, plus whatever interest may have accrued on that amount.

Regulations issued pursuant to FEGLIA provide that if a court order "applies to only part of the insurance benefits, an insured individual can designate a different beneficiary to receive the insurance benefits that are not included under the court order." 5 C.F.R. § 870.802(i)(2). The settlement agreement compelled Mr. Czaplicki to provide a fund of "not less than" $120,000 for Elizabeth. Pl.'s Mot., Ex. 1, ¶ 5. Because the additional $5,000 in the FEGLI policy were not expressly due Elizabeth under the settlement agreement, Mr. Czaplicki could assign this amount elsewhere. And his duly received change-of-beneficiary form effectively designated Mr. Moodispaw to receive such a sum as trustee of the Edward Joseph Czaplicki Irrevocable Insurance Trust. Therefore, as a matter of law, the trustee is entitled to the remaining $5,000 of insurance proceeds, plus whatever interest may have accrued on that amount. It also is of note that heretofore the Court issued a consent order for partial settlement and distribution of a portion of the funds held in the Court's registry. Accordingly, the Court's Order of the awards on summary judgment will be cast in terms of the percentages that $120,000 and $5,000, respectively, are of $125,000, the face value of the policy.

CONCLUSION

For the foregoing reasons, a separate order will be issued: GRANTING the plaintiff's motion for summary judgment with respect to 96 percent of the funds remaining in the Court registry; DENYING the plaintiff's motion for summary judgment with respect to the remaining 4 percent of the funds remaining in the Court registry; DENYING the defendant's motion for summary judgment with respect to the 96 percent of the funds remaining in the Court registry; and GRANTING the defendant's motion for summary judgment with respect to 4 percent of the funds remaining in the Court registry.


_May 2, 2003_                    _____/s/_____
                                 __
Date                             James K Bredar
                                 United States Magistrate Judge

14